Abraham 1ST. (teller, J.
Respondents’ motion for judgment in their favor is deemed to have been made pursuant to section 4401 of the Civil Practice Law and Rules, which provides that “ Any party may move for judgment with respect to a cause of action or issue upon the ground that the moving party is entitled to judgment as a matter of law, after the close of the evidence presented by an opposing party with respect to such cause of action or issue
This is an article 78 proceeding involving the legality of the attempted reclassification on July 1, 1959 of the two petitioners from personnel examiner to senior personnel examiner. On the basis of the submission to him the Justice presiding at Special Term, Part I determined that there was an issue of fact as to whether “ petitioners performed the duties of a Senior Personnel Examiner in accordance with the definition of the duties of that position.” Petitioners claimed that their reclassification on July 1, 1959 “ was based on the revised job specifications for our positions which the respondent Commission adopted on June 30, 1959, when it adopted the resolution *1006 reclassifying us to Senior Personnel Examiner, and our allocation to Senior Personnel Examiner was made pursuant to such revised job specifications.” The resolution reclassifying these petitioners was not included in the papers then submitted, and it is evident that the determination as to an issue of fact arising in this proceeding must have been based on the assumption that there had been some reclassification in July, 1959 of the position of senior personnel examiner. In any event, the record then made was not clear.
. Petitioners having demanded a jury, the trial, before me proceeded as a jury trial, it being contemplated that the jury would answer in writing at the end of the trial a specific question as to whether petitioners had prior to July 1, 1959 been performing the duties provided in the supposed reclassification of the position of senior personnel examiner. However, the evidence, and particularly the exhibits in evidence, submitted on petitioners’ case established conclusively as a matter of law that there was no revision of the job specifications or reclassification of the position of senior personnel examiner, that petitioners at no time performed the regular duties of a senior personnel examiner in accordance with the definition of the duties of that position and that their so-called reclassification in July, 1959 to the higher position of senior personnel examiner was actually an attempted promotion. On the basis of the evidence there is no issue of fact to be tried and respondents are entitled to judgment dismissing the petition herein on the merits.
The City Career and Salary Plan attempted to establish standards for classifying and reclassifying positions. The original classification was to be effective as of January 1, 1956 with power to reclassify thereafter under limited conditions. It was therein provided: ‘1 Such original position classifications and salary grade allocations shall be made, in the case of each position or class of positions, on the basis of the duties, responsibilities, and examination qualifications naturally and properly pertaining to the present title of such position or class of positions, without regard to out-of-title work performed by any incumbent thereof. Thereafter, the reclassification and salary grade reallocation of positions shall be made on the basis of the actual duties and responsibilities thereof and the examination requirements based on such duties and responsibilities as determined by the Department of Personnel. ’ ’
The city commission was of the opinion during the years from 1956 to 1961, when Matter of Weber v. Lang (13 A D 2d *1007 345, affd. 11 N Y 2d 997) was decided, that it could reclassify at any time to higher positions within the table of equivalencies those employees whose original employment prior to the Career and Salary Plan had been in an unlimited grade.
In Matter of Mandle v. Brown (4 A D 2d 283, affd. 5 N Y 2d 51) it was held that the civil service structure of an agency could be conformed by the operation of the plan to the realities which obtained prior to the classification. Thus, as to a previously unlimited grade, classification could properly be made to different grades based on the actual differences in duties performed prior to January 1, 1956 by those in an unlimited type of position.
Here, it is clear that these two petitioners did not perform prior to January 1,1956 the duties provided in the classification of senior personnel examiner as then defined but did theretofore perform duties which fell into the classification of personnel examiner.
The specifications of the duties and responsibilities of a senior personnel examiner, aside from supervisory work as to other personnel, contain the essential distinction that he or she ‘1 under direction, plans, supervises and directs the work of a unit in the central personnel agency”. Neither petitioner at any time directed the work of a unit in the central personnel agency. Obviously, the contention that a certain amount of supervisory work was done at various times does not meet the required test, nor is there any support for the belated view urged that special assignments or projects should be deemed the equivalent of a unit. It is clear that, under that definition, only one who was regularly assigned prior to 1956 and performed the function of being the chief of a regular unit of the central personnel agency could legally be designated a senior personnel examiner.
. The assignment of either petitioner after January 1, 1956 to take charge temporarily of a unit or of a group now claimed to constitute a unit cannot be viewed as performance of the duties of a senior personnel examiner as such. But, even if it could be so considered, such assignments after January 1, 1956 to the duties of a higher position would have been out-of-title work, which may not be taken into consideration in the classification or reclassification of any employee. The previously unlimited grade, insofar as available assignments are concerned, ceased to exist after the 1956 classification (Matter of Weber v. Lang, 13 A D 2d 345, 348, supra) and any change of duties thereafter made would involve an unlawful promotion, regardless of *1008 whether the new duties were comprehended within the previous unlimited grade (Matter of Mandle v. Brown, 5 N Y 2d 51, 65, supra).
Now, the commission had the power to reclassify at some later time that position by revising the specifications therefor, and, after such reclassification of the position, to reclassify to the position any personnel examiners whose actual prior duties would now fall into the revised scope of the new specifications. Such an amendment of the original specifications was made on December 30, 1958 with respect to the position of senior personnel examiner (examining), but not with respect to senior personnel examiner (classification), in which group petitioners belong.
The exhibits show that there were a written recommendation and a report as to petitioners being reclassified in 1959 wherein the expression, “ revision of specifications,” was used. However, it is clear that there was no revision of the original specifications for the position of senior personnel examiner. The resolutions reclassifying petitioners disclose that they were being made on the formal basis of the original provisions of the Career and Salary Plan and that no revision or amendment of the definition of the general duties of a senior personnel examiner was being attempted. All that happened was a reclassification of the petitioners’ status, that is, of the individuals as a promotion, but not of the position, and that is not permitted as repugnant to the basic concept of the competitive civil service system. Whether petitioners were thereafter assigned to new duties or continued in their old duties is immaterial, since the reclassification was not a true one.
The situation here is basically the same as that involved in Matter of Weber v. Lang (13 A D 2d 345, 347, supra) wherein the court said: “In the first place the 1960 reclassification is not truly a reclassification except in name. No new titles or new job descriptions were promulgated, nor were new allocations made. The title, the job description, and the allocation appropriate thereto of the position of senior personnel examiner grade 18 had been effected in 1955 under the 1954 plan. All that happened in 1960 was that the six employees now described as reclassified were moved, without the benefit of competitive examination or position on an eligibility list, to the higher positions and the higher salaries allocated to them.”
It is interesting to note that, as a result of the Weber case, the city commission proceeded to implement that decision by nnnnlling such illegal reclassifications as those deemed to have been effectuated in petitioners’ cases, and that these two peti *1009 tioners thereupon brought this proceeding, claiming that their situation was different from those involved in Weber.
On analysis, as herein indicated, it is determined that there is no basic difference from the Weber holding and that, in the absence of a true reclassification of the position of senior personnel examiner or of a showing of performance of duties prior to January 1, 1956 qualifying for the position of senior personnel examiner as defined, the proceeding to restrain respondents from revoking petitioners’ July 1, 1959 reclassification and for related declaratory relief must, as a matter of law, be dismissed on the merits.